I represent Mr. Khera. I only wish to address the third issue in the brief, the third sentencing issue, the one concerning the 5K reduction, and I'd like to reserve 4 minutes of my time. I want to start off by pointing out to the Court, I was not defense counsel in the district court, so when I talk about the facts, which I do want to talk briefly about the procedural facts, it's what's strictly in the record. But what happened in this case, in a nutshell, is this. Mr. Khera gets arrested. He immediately decides to cooperate with the government. He's debriefed four times, gives a number, a large amount of information to the government, and that causes the government to send a letter to defense counsel saying, well, we've gone through Mr. Khera's information. We think it's worth something. We think it's worth a 28 percent reduction, and we propose that you plead guilty, and whatever the guidelines comes out to, we will give you a 28 percent reduction from that. And he turned it down. He turned it down. Defense counsel sent a letter the next day saying, what are you talking about? Over the last six months, we were talking more along the lines of a 50 percent reduction from that. No meeting of the minds. No meeting of the minds there, except law students will recognize that as a failure to arrive at a contract. Well, let's be more specific. No meeting of minds on whether, on the amount of the reduction. Meeting of the minds that he cooperated that he deserved some reduction. The rub. Well, didn't the government also indicate that his information was insufficient? He was holding back all kinds of problems with the information so far. That's why they said 28 percent. They said, look, we evaluated his information. I have the letter with me. I can quote it to you. Yes, so do I. It's right in front of me. We evaluated his information. We think he's fudging on some facts. We don't think he's that truthful. But having evaluated his four debriefings, we think he's worth 28 percent. And so what's your point? What flows from this? Defense counsel says 50 percent. The meeting of the minds is he gets some reduction. The rub. So you're asking us to rule at that point that no matter what happens thereafter, no matter what the overall evaluation is, he's entitled as a matter of law to a 28 percent reduction in something? But he turned it down. He turned down the amount of the reduction. The next thing that happens is the government provides a plea agreement. It says, here, here's your plea agreement. The plea agreement doesn't even say 28 percent. It says somewhere between zero and 50 percent. And we determine it's exclusively within our control how much we're going to give you. That was the understanding going in. That was the understanding going in. Going in before he debriefs. Now he's debriefed. The government says 28 percent. The next thing the government says is not even 28 percent. Zero to 50, exclusively within our control. You know, I hate to keep interrupting you, but this is standard in plea bargaining. We offer you something, you don't take it fine. You're going to eat the whole program. I mean, that happens 100 times a day. And the standard plea bargaining and the plea bargain they gave him, if you read it carefully, is based upon future cooperation, not past cooperation. You read their plea bargain that they send him very carefully. It's the wording is, after you debrief, we will determine what it's worth and we will tell you that. He has already debriefed. He has already given them information. They have already said it's worth 28 percent. Now they're saying, we're not going to tell you what it's worth. You plead. We get to decide exclusively how much you get. How can any defense attorney sign that agreement? How can a defendant sign that agreement? You know, I guess what happened to me, it doesn't make any difference, but I signed thousands of those plea agreements. It was standard to tell a person, listen, this is an opportunity to help yourself. You do what you think is right, tell the truth, and then we will decide what it's worth and tell the judge. Take it or leave it. That's exactly what the government did. And they wrote him a letter and they put it in writing and they said, we think it's worth 28 percent. And he said, no, I think it's worth 50. That was the dilemma. But what's your point? What should have happened that did not happen that you're complaining about today? Ultimately, my point is the judge should have had a hearing. Ultimately, that's what it comes down to. Because ultimately, they're saying they then change their position and say, after he goes to trial, and the trial was not about guilt or innocence. The trial was about ruling the offense. A hearing to determine what? A hearing to determine the value of his cooperation. Again, it could be anything between 0 and 50. Their position was, now it's worth 0. How can they say it's worth 0 when they already put in writing it's worth 28 percent? How can they – what changed? What caused them to go from 28 percent to 0? We'll let the other side answer that question. Well, that's my question. Nothing changed. Nothing other than the fact that he went to trial. The way I read the record, there was no objection tendered in the trial court that your client was being punished for having gone to trial. Absolutely there was. He wrote a very long motion saying, hey, what's going on here? I want a hearing on why I'm not getting my reduction. Yeah, and that's the point. And the objection wasn't that he is being punished for going to trial. The question was what's going on. Well, that's the question. Why am I being punished now? I thought there was no objection that he was being punished. I think he clearly – I think he clearly said that. If you read the motion, he was very – Well, maybe when you're sitting down, you can direct me to it, because I couldn't find it. I probably missed it. He was very adamant that I feel I'm being punished. Why am I not getting any reduction now? What has changed? He said that before the trial. He said that after the trial. You're down to four minutes. Why don't we hear from the other side? Okay. Thank you, Your Honor. And you can respond. Good morning, Your Honors. I'm Ann Pings. I'm here today on behalf of the United States. I'd like to, I guess, just address some of the points that were raised earlier. The United States never, never made a commitment that there was objective information certifying into perpetuity that the debriefings that Mr. Karab provided were of any value. The government made a standard plea offer written in conditional future – conditional if the defendant pleads guilty, if the defendant admits responsibility for his role in this conspiracy, that we will make the following stipulations. And when you wrote that, you had problems with his cooperation. Is that right? We specifically had problems, and the standard practice, as the standard plea agreement for the Eastern District of California is in the materials. It's what we offered him later. It typically includes language from zero to 50 percent. Do you realize how dangerous that is? It's the equivalent of telling somebody, look, so far you haven't told us the truth, but we're going to put a big incentive in front of you to do better if you come up with more information that so far you've withheld. That's creating an incentive for a defendant to make up stuff to do better with the government on sentencing. Certainly, in retrospect, there's many, many reasons that the letter should never have been written. You bet. The reason it was written, however, was to put a limit on our typical 50 percent and to advise them that we were putting a limit at 28 percent. You see, you're dangling an incentive in front of somebody who's been holding out on you. I mean, you now admit you're dealing with somebody who you think is not telling you the whole truth, and you dangle an incentive, tell more, and you'll get more. This creates an incentive with criminals to make stuff up. Anyway, go ahead. The defendant was never told he would get 28 percent no matter what. The only thing he was offered was if you admit your own responsibility in this conspiracy, if you admit this certain number of kilos, if you follow this stipulation. It's all laid out in the letter that's in the record. The letter itself begins, The government is prepared to make the following plea offer, colon. The 28 percent figure was always part of the larger package of the defendant admitting responsibility, accepting responsibility, and admitting his own role in this conspiracy, which is something that he still has not done. I feel compelled to point out what I think is a very significant factual error contained in the defendant's reply brief, and that is that the defendant states absolutely incorrectly at page 21 of his brief that the district court made a finding that the defendant had admitted in his debriefings that he was responsible for 150 to 500 kilos of protein. That's at page 21. He says further that the defendant, the court found that during the debriefings Cara easily admitted to 150 kilos of cocaine. And that is absolutely 100 percent incorrect. It's not factual. The court can see from the pre-sentence report, it starts out talking about the base offense level related to the 9 kilos of crystal methamphetamine that the defendant was trying to find a buyer for. The district court refers to the 9 kilos of crystal meth at page 832, says he's talking about the 9 kilos. That's what the defendant said on the wiretap, the part where the court then later says it came out of his own mouth. He was talking about the wiretap on which the defendant says he's looking for a buyer for the 9 kilos of crystal meth, and when he gets a buyer, it's a guy who can jump on the team and buy 20 kilos from us weekly. So the – I just want to absolutely correct that. There was never a finding that the defendant had committed his own responsibility with respect to cocaine, and the district court never relied on the debriefings in any way during the sentencing. The other side says there should have been a hearing to get to the bottom of all of this, whatever that means. Your reaction to that is what? The defendant is required in the case law, particularly as it began with Wade, to make a threshold showing of some sort of bad faith or unconstitutional motive. All the defendant has shown here is that he – he showed up for some debriefings, he went to trial, and he didn't get a 5K. There's no evidence of unconstitutional motive or any bad faith. But isn't that what the hearing is designed to uncover and to look at? You say there's no evidence of this, but there's a lot of smoke and he says we should be able to get into this and look for some fire. After all, you told him he'd earned a 28 percent and then that disappeared. It might be assumed on the basis of that that he was being punished for going to trial. Getting back to Your Honor's point, the defendant in the district court in the sentencing asked essentially for specific performance. He did not, I don't believe, properly raise the issue of punishment. I couldn't find it either. The – again, we never promised the defendant an objective 28 percent. We said if you admit responsibility for your own conduct, if you enter a plea, then we will consider making a – we will make a motion for 28 percent. None of those things ever happened. There is no breaching of any agreement to explore because there was never any agreement. The – there's any bad faith like you had in the McCallion case where there was an agreement, the case was remanded to explore the breach of that agreement, those facts are not present. We do not have any of the facts present like in the case law. There was no arrest of any person. The Court had before it factual sworn declarations of DEA agents. There were no arrests. There were no recorded calls like you had in some of the other cases. There was no luring a co-defendant out to be arrested like you had in the other cases. There was just talk. And as the district court pointed out, the sentencing occurred two years, two years later, after the 28 percent letter. Lots of things happened during those years. The trial started a year and a half after the 28 percent letter. There was no indication that there was – it was connected in any way to going to trial. Admit your responsibility. Essentially, we use the phrase, it sounds corny, but you have to come over to the other side. You have to tell the whole truth, the truth about your own wrongdoing, because the idea is we're looking at these people as potential witnesses or potential people. And that's the problem with saying, you know, so far 28, come up with more and you can do better. The track record of people like this, and I'm not talking just from my own experience, but look at Supreme Court cases, is if you give them incentive to come up with more, they will. Well, again, the context it was written in was there's no way you're getting 50, you might get 28. And that, I understand, in retrospect, certainly viewing it now, it was a bad idea, clearly, all around. I don't know what else I can say about that. But it was always conditional. It was never an objective promise. It was never an objective statement that you have hit this marker. It was always, if you admit your own role in this conspiracy, then, you know, we will make this motion. And if he had done that and entered the plea, admitted responsibility, admitted the facts of this conspiracy, and then we refused the motion, perhaps we would have something for the Court to explore. But the Court had nothing to explore, because there was no preliminary showing of bad faith. Keep in mind, the whole time we're talking to this guy, we talked to six or seven other guys who testified against him in orange jumpsuits saying a completely different story than what he said. Even at his own sentencing, he said... I like that, testifying in orange jumpsuits. I'm sorry. It's graphic. Go ahead. The defendant says, even at his own sentencing, and this is what the district court relied on, all I did was put a few deals together. So what? I did 10 to 20 kilos. What about the others? Eli, 40 kilos. Mike, 32 kilos. The money was all for cars. Those 10 kilos were never in my house. So the one thing I keep sort of tripping me up a little bit is the judge then went on and said, the longer you talk, the worse it gets. You blame everyone but yourself. You act like this didn't happen to you. He says all this... I cannot imagine if the government had stood up at that point and said, Your Honor, we'd like to make a 5K motion. The defendant has just told the Court, I didn't do anything, all I did was sell cars, maybe I did 10 kilos in my whole life, and then we're going to stand up and say we think this guy is trustworthy and make the motion? That's absolutely unthinkable. So even if nothing else had happened, at that minute we couldn't have made the Do my colleagues have any questions? Counsel, as I understand it, it is the defendant's burden to make the threshold showing in the first place, right? That's absolutely right. All right. And if, in fact, the district judge finds that there is no agreement, in order to go any further, then the district judge would have to make a finding that some evidentiary hearing was required, right? I think he'd have to make a finding of whether the threshold has been met. Right. And if the judge finds that the threshold has not been met, then there's no reason to go forward to an evidentiary hearing, right? That's the government's position and the district court made such a finding. And if, in fact, it went through, the court went ahead and had an evidentiary hearing, then the defendant would have to show, it would have the burden to show that there was some improper motive in denying him the 5K-1 departure, correct? Correct. All right. And assuming that he was able to do that, he would then also have to show that whatever information he had provided was of substantial assistance, right? Correct. All right. And it's your contention that the defendant never met any of those burdens. That's absolutely correct, and I believe that's what the district court found. Great. Thank you. Thank you. You may respond, counsel. Well, I think the basic disagreement is over the facts, Your Honor, and I agree with everything what Judge Benifte says. I think if we had an evidentiary hearing, we would show all that. Here's what's wrong with the government. I'm sorry. Are you able to point us to the place in the record where there was an objection that the client was being punished as compared to simply asking for specific performance? He never asked for specific performance. That's one of the flaws. There was no contract. There was no written contract to enforce. Okay. Here's what's wrong with the government's position in a nutshell. They keep saying he never admitted his role. He never admitted how many kilos he did. He did. If you read his debriefings, he's telling the government, here is what I did, here is what everybody else did. He admits in his debriefings to something like 150 kilos. Now, the government can stand up here and say, well, he never admitted it, that's why we didn't give him the 5K. He admitted it. That's why they wrote the letter saying he's worth 28 percent, because he did admit it. That's why he performed. Now, once he performs and they say that's worth 28 percent, how can they later turn Well, what your argument seems to be saying, he admitted 100 percent. The government didn't think so. They said it's only worth 28 percent. Foolish or not, that's hardly a meeting of the minds and an agreement as to what the value of the assistance was. That's exactly right. It's not a meeting of minds. So you're asking for specific performance. No. It's not a meeting of minds as to the value of his assistance. It's a meeting of minds that he provided assistance. How much? 28 percent? 50 percent? That's the disagreement. Not that he should get — he shouldn't get any reduction, just how much of a reduction. And then the government turns around and says zero. What is the justification for that? There is none. That's what the evidentiary hearing should have been about. What is the government's justification for changing its position from 28 — at least 28 percent to now saying zero percent? What changed in that interim? The only thing that changes is he went to trial. If you read his debriefings, he explains his role. He explains everybody else's role. He gives up names of other people. And the government said nobody got arrested pursuant to his information. That is disputed. The defense stood up and said, yeah, he named names of people who got arrested and information that led to people's arrest. The government says that's not true. The judge says, I just accept the government's word for that. That's what we need the evidentiary hearing on. So let us go back and show you where he provided substantial information and that it was valuable to the government, and the government has no excuse for not giving him some reduction. That's the issue, some reduction. Do you have any other points in response to the government's presentation? I could be here all day, Your Honor, but I think it's — I think you get the issue. Thank you. Okay. Thank you very much. The case just argued as ordered, submitted. As is the next case, United States v. Armenta-Jimenez. This will go to Curtis v. Giorbino.
judges: Schroeder, Trott, Benitez